IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| JOLLY ROGER FUND LP, *et. al*, | | |
| | * | |
| Plaintiffs, | * | |
| | | |
| v. | * | Civil Case No. RDB 05-841 |
| | | |
| SIZELER PROPERTY INVESTORS, | * | |
| INC., *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM OPINION</u>

Pending before the Court is the Motion to Dismiss filed by Defendants Sizeler Property

Investors ("Sizeler") and its nine directors[1] ("Directors") (collectively the "Defendants").

Defendants move to dismiss the Complaint filed, on March 28, 2005, by Plaintiffs Jolly Roger

Fund LP and Jolly Roger Offshore Fund, Ltd., on behalf of a proposed class of all Sizeler

common stockholders, (collectively the "Plaintiffs") based on Rule 12(b)(6) of the Federal Rules

of Civil Procedure.

Sizeler is a self-managed real estate investment trust ("REIT") incorporated in Maryland

with its principal place of business in Kenner, Louisiana.  (Compl. ¶ 9.)  Sizeler, which is

publically traded on the New York Stock Exchange ("NYSE") under the symbol "SIZ", owns

and manages income-producing apartment and shopping center properties in the southeastern

United States.  (Compl. ¶ 9.)  Plaintiffs were holders of Sizeler common stock as of the close of

---

[1]       These Directors are:  J. Terrell Brown; William G. Byrnes; Harold B. Judell; Sidney W.
Lassen; Thomas A. Masilla Jr.; James W. McFarland; Richard L. Pearlstone; James Robert Peltier; and
Theodore Strauss.  (Compl. ¶¶ 10-18.)

trading on March 14, 2005.[2]  (Compl. ¶ 8.)  It is unclear whether Plaintiffs were Sizeler

shareholders at the time this lawsuit was filed.

Plaintiffs allege, in a one count Complaint, a direct suit against Sizeler and its Directors

for breach of their fiduciary duties "to Sizeler's outside common shareholders."  (Compl. ¶ 1.)

Specifically, Plaintiffs allege that their stock holdings were diluted when Defendants sold 2.69

million newly issued Sizeler shares to four institutional investors[3] at a discounted price.

Defendants assert that this claim must be dismissed, as it cannot be a direct action[4] by the

shareholders against the Directors, but instead must be a derivative action[5] brought by the

shareholders on Sizeler's behalf.  Defendants, however, contend that Plaintiffs have failed to

satisfy the legal prerequisites necessary to pursue a derivative action and, therefore, any

derivative claim must also be dismissed.

The issues have been fully briefed and no hearing is necessary on this motion.  *See* Local

Rule 105.6 (D. Md. 2004).  For the reasons stated below, the Defendants' Motion to Dismiss is

GRANTED.


## BACKGROUND

---

[2]    Although Plaintiffs do not specifically allege in which state they reside, they allege that this dispute is between citizens of different states and that the amount in controversy exceeds $75,000. (Compl. ¶ 5.)

[3]    The institutional investors included TIAA-CREF Investment Management, LLC, Heitman Real Estate Securities, Inc., RREEF America, L.L.C., and Palisade Capital management LLC.

[4]    "A 'direct' action is a claim asserted by a shareholder, individually, against a corporate fiduciary, such as a director, to redress an injury personal to the shareholder."  *Paskowitz v. Wohlstadter*, 151 Md. App. 1, 9, 822 A.2d 1272, 1276 (2003) (applying Delaware law).

[5]    "A 'derivative' action is a claim asserted by a shareholder plaintiff on behalf of the corporation to redress a wrong against the corporation."  *See id.*

2

For the purposes of this Rule 12(b)(6) motion, the Court accepts all well-pleaded allegations contained in Plaintiffs' Complaint as true and construes them in the light most favorable to the Plaintiffs.  *See Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Plaintiffs allege that Sizeler's Board of Directors implemented a plan to entrench themselves in anticipation of a proxy contest after First Union Real Estate Equity & Mortgage Investments ("First Union")[6] began to solicit proxies.  (Compl. ¶ 3.)  First Union is the single largest stockholder of Sizeler, having acquired a substantial amount of its shares starting in the Fall of 2004 as detailed below.  (Compl. ¶ 26.)  On September 8, 2004, First Union filed with the United States Securities and Exchange Commission ("SEC"), on Form 13D, a general statement of acquisition of beneficial ownership as notification that it had become a beneficial owner of 5.07% of Sizeler stock.  (Compl. ¶ 27.)  On November 16, 2004, and December 6, 2004, First Union amended its 13D filing to disclose that it has increased its ownership interest to 7.7% and 8.46%, respectively.  (Compl. ¶¶ 28 & 29.)  On or about December 21, 2004, First Union notified Sizeler of its intention to nominate Michael L. Ashner and Peter Braveman, both directors and trustees of First Union, as well as Steven Zalkind to Sizeler's Board of Directors. (Compl. ¶ 30.)  First Union continued to acquire additional shares of Sizeler and filed a series of amended Form 13D disclosures with the SEC.  (Compl. ¶¶ 31 & 32.)   In its February 23, 2005 SEC filing, First

---

[6]     In a related suit, on March 15, 2005, Sizeler and its Directors filed a Complaint in this Court against its largest shareholder, First Union.  *See Sizeler Property Investors, Inc., et. al v. First Union Real Estate Equity & Mortgage Investments*, RDB 05-718.  In its Complaint, Sizeler asked for a declaratory judgment that, pursuant to Maryland law, Sizeler's Directors did not breach their fiduciary duties with respect to the placement of additional Sizeler shares, which was allegedly part of a longstanding corporate plan.  This action, which also alleged a violation of the federal securities laws and contained a counter-claim, was resolved by the parties and an Order approving a stipulation of dismissal with prejudice was entered by this Court on September 13, 2005.

Union disclosed that it had sent a letter to Sizeler shareholders proposing a slate of directors, and indicating that if its slate was elected, it intended to have Mr. Lassen removed as Chairman and Chief Executive Officer ("CEO") of Sizeler.  (Compl. ¶ 33.)  First Union's last amended Form 13D filing was made on March 9, 2005 and it disclosed that First Union had a 9.9% ownership interest in Sizeler.  (Compl. ¶ 34.)

As indicated above, *supra* at n.1, Sizeler has nine directors.  All but two of Sizeler's directors are outside directors, meaning that they are not Sizeler executives or employees.  In addition to acting as directors, Mr. Lassen is Sizeler's CEO and Mr. Masilla is Sizeler's President and Chief Operating Officer.  (Compl. ¶¶ 13 & 14.)  On March 14, 2005, after the NYSE closed at 4:00 p.m. and without prior disclosure to the public,[7] Defendants entered into a transaction to sell 2.649 million shares of newly issued Sizeler common stock to four large institutional investors at $10.75 per share.  (Compl. ¶ 36.)  Sizeler's stock closed at $12.10 that day, but the sale price used for the transaction with the institutional investors was discounted by $1.35 a share.  (Compl. ¶ 36.)  Plaintiffs' Complaint does not specify which Directors voted in favor of this transaction.  On March 15, 2005, Sizeler issued a press release announcing the sale and, on March 17, 2005, it filed an amended 10-K disclosing the transaction.  (Compl. ¶ 37.)  On the day Sizeler announced the stock sale, First Union sent a letter to Sizeler offering to purchase all of the offered shares for $11.25 per share.  (Compl. ¶ 38.)

Plaintiffs allege that the Directors violated § 2-405.1(a) of Md. Corp. & Ass'ns Code

---

[7]        A 10-K filed by Sizeler earlier the same day did not mention a new stock offering. (Compl. ¶ 35.)

Ann.[8] by violating their duty of good faith.  (Compl. ¶ 49.)  Furthermore, Plaintiffs allege that

the Directors acted in their own self-interest because the stock sale was an effort to entrench

themselves as Directors in response to First Union's proxy battle.  (Compl. ¶ 50.)  Plaintiffs

allege that "Defendants' violations of law set forth herein adversely affected Plaintiffs and the

Class' ownership interest in Sizeler by diluting the respective proportions of equity."  (Compl. ¶

54.)  The Complaint does not allege that Plaintiffs had a controlling interest in Sizeler that was

negatively impacted by the dilution caused by the stock sale.  Nor does the Complaint

specifically state whether the alleged injury caused by the "dilution" was to the Class' voting

rights or to the value of its Sizeler shares, or an injury for both.

## STANDARD OF REVIEW

Defendants seek to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  As the legal sufficiency of the complaint is challenged under a Rule

12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the

existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern

Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King

& Spalding*, 467 U.S. 69, 73 (1984)).  A Rule 12(b)(6) motion to dismiss "should only be

granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it

---

[8]        Section 2-405.1(a) of Md. Corp. & Ass'ns Code Ann. states:

A director shall perform his duties as a director, including his duties as a member of a committee of the
board on which he serves:
    (1) In good faith;

    (2) In a manner he reasonably believes to be in the best interests of the corporation; and

    (3) With the care that an ordinarily prudent person in a like position would use under similar
    circumstances.

appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Ibarra,* 120 F.3d at 473; *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  The court must disregard the contrary allegations of the opposing party.  *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc.,* 213 F.3d at 180; *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004).

<u>DISCUSSION</u>

This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  As the source of this Court's jurisdiction over this case is based on diversity, the principles set forth in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require application of the law of Maryland

to questions of substantive law.[9]  With respect to corporate governance issues, Maryland courts

often look to Delaware caselaw.[10]  Accordingly, this Court's analysis must be guided by

Maryland law, but will make reference to Delaware law in the absence of applicable Maryland

law.

"The decision whether a suit is direct or derivative may be outcome-determinative."

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004) (noting that the

distinction between a direct suit and a derivative one is sometimes difficult, but has many legal

consequences).  For example, if a suit is derivative the shareholder must make demand on the

company's board of directors, absent a showing of demand futility, requesting that the board

pursue the suit on behalf of the company, before the shareholder is permitted to pursue the cause

of action.  *See id.* (discussing Delaware law); *Werbowsky v. Collomb*, 362 Md. 581, 766 A.2d

123 (Md. 2001) (recognizing demand requirement under Maryland law); Fed. R. Civ. Pro. 23.1.

Even when a stockholder can properly pursue a derivative action on behalf of a corporation, any

damages recovered must go to the corporation and not the stockholder plaintiff.  This result is

because a derivative action is brought by the shareholder *on behalf of the corporation* to redress

---

[9]      Sizeler is a Maryland corporation and the parties both apply Maryland law in their submissions to this Court.

[10]      Delaware courts are frequently recognized for their expertise on corporate law issues. *See generally Werbowsky*, 362 Md. at 618, 766 A.2d at 143 (noting respect properly accorded Delaware decisions on corporate law); Lisa M. Fairfax, *Spare the Rod, Spoil the Director? Revitalizing Director's Fiduciary Duty Through Legal Liability*, 42 Hous. L. Rev. 393, 405 n.63 (2005); E. Norman Veasey & Christine T. Di Guglielmo, *What Happened in Delaware Corporate Law and Governance from 1992-2004, A Retrospective on Some Key Developments*, 153 U. Pa. L. Rev. 1399, 1403 (2005); Patty M. DeGaetano, Comment, *The Shareholder Direct Access Teeter-Totter: Will Increased Shareholder Voice in the Director Nomination Process Protect Investors?*, 41 Cal. W. L. Rev. 361, 376 (2005) ("Delaware is well known as the most important state for purposes of corporate law because not only are a majority of public companies incorporated there, other states look to Delaware corporate law for guidance.").

a wrong against the corporation.  *See Paskowitz v. Wohlstadter*, 151 Md. App. 1, 10, 822 A.2d

1272, 1276 (Md. Ct. Spec. App. 2003) (applying Delaware law).  "The defendant in a derivative

action may be a corporate fiduciary, such as a director, who committed a wrong against the

corporation."  *Id.*  In contrast, a "'direct action' is a claim asserted by a shareholder, individually,

against a corporate fiduciary, such as a director, to redress an injury personal to the shareholder."

*Id.*  Damages recovered in a direct action are payable individually to the shareholder, not to the

corporation, because the claimed injury is to the shareholder, and therefore the remedy must

address this individual injury.  *See id.*

A.      Whether Plaintiffs' Complaint is Properly a Direct Suit

        The Plaintiffs assert that this action is brought directly by shareholders against Sizeler

and its Directors for breach of fiduciary duty.  Defendants assert that the allegations in Plaintiffs'

Complaint cannot be brought as a direct claim.  "Whether a claim is derivative or direct is not a

function of the label the plaintiff gives it."  *Paskowitz*, 151 Md. App. at 10, 822 A.2d at 1277.  A

court must generally look to the nature of the action, as it is stated in the complaint, to determine

whether a cause of action is derivative or direct.  *See id.* (internal citations omitted); *see also*

*Tooley*, 845 A.2d at 1039.  Unlike the neighboring Supreme Court of Delaware, which recently

established a new test to examine this issue, the Maryland Court of Appeals has not recently had

the opportunity to clearly articulate what test should be applied to determine whether a

shareholder claim is direct or derivative.  *But see Waller v. Waller*, 187 Md. 185, 49 A.2d 449

(Md. 1946) (discussed in detail below).

        In *Tooley*, the Supreme Court of Delaware held that to determine whether a stockholder's

claim is derivative or direct the "issue must turn *solely* on the following questions: (1) who

suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley*, 845 A.2d at 1033.  To bring a direct suit, "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation." *Id.* at 1039; *see also Tafflin v. Levitt*, 92 Md. App. 375, 381, 608 A.2d  817, 820 (Md. Ct. Spec. App. 1992) (finding that individual action by depositor was not permissible where the injury was incidental and not distinct from injury to institution).  To show such an injury, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.*  The framework outlined in *Tooley* is instructive on the issues presented to this Court.

    1.    <u>Maryland Fiduciary Duty Obligations</u>

The parties take opposite views on what both characterize as "well-settled" Maryland law outlining the fiduciary duties owed by directors of a corporation and the resulting causes of actions that can stem from a possible breach of these duties.  Plaintiffs state that, under Maryland law, a director owes fiduciary duties, not only to the corporation, but also to the corporation's shareholders.  As a result, Plaintiffs argue, that breaches of these fiduciary duties may result in a direct action by the corporation's shareholders.  Defendants assert that, pursuant to Maryland law, a stockholder may only pursue a derivative cause of action on behalf of the corporation for breach of fiduciary duty.

As noted above, Plaintiffs allege that Defendants violated § 2-405.1(a) of Md. Corp. & Ass'ns Code Ann.  Recently, the Maryland Court of Appeals conducted a detailed discussion of derivative shareholder actions in *Werbowsky v. Collomb*, 362 Md. 581, 766 A.2d 123 (Md.

2001).  In doing so, the court explained that § 2-405.1(a) of Md. Corp. & Ass'ns Code Ann., the very provision that Plaintiffs in this case claim was violated, acts as a check to the directors' managerial authority by requiring them to perform their duties in good faith.  *Werbowsky*, 362 Md. at 598-99, 766 A.2d at 133.  The court specifically stated that the directors' obligations under this provision "run[], however, to the corporation and *not, at least directly, to the shareholders*." *Id.* (emphasis added).

In *Waller*, the Maryland Court of Appeals stated: "It is generally stated that directors occupy a fiduciary relation to the corporation and all its stockholders, but they are not trustees for the individual stockholders." *Waller*, 187 Md. at 194, 49 A.2d at 454.[11]  The Court further noted that "[t]he reason for this distinction is that in law the corporation has a separate existence as a distinct person, in which all the corporate property is vested and to which the directors are responsible for a strict and faithful discharge of their duty, *but there is no legal privity or immediate connection between the directors and the individual stockholders*." *Id.* (emphasis added).  The court went onto hold that "[w]here directors commit a breach of trust, they are liable to the corporation, not to its creditors or stockholders, and any damages recovered are assets of the corporation, and the equities of the creditors and stockholders are sought and obtained through the medium of the corporate entity." *Waller*, 187 Md. at 190, 49 A.2d at 452.

In *Waller* the plaintiff claimed that several officers and directors were conspiring to

---

[11]     The Maryland Court of Appeals made a similar statement in *Toner v. Baltimore Envelope Co.*, 304 Md. 256, 498 A.2d 642 (Md. 1985), which dealt with a dispute involving a closely held corporation, not a publicly, exchange-traded one like Sizeler. *Toner*, 304 Md. at 268, 498 A.2d at 648. Furthermore, *Toner* focused on the relationship between majority and minority shareholders, not directors and shareholders. *Toner*, 304 Md. at 273, 498 A.2d at 650.

obtain control of the company and destroy the value of his stock.  In that case, the Court of

Appeals held that "an action at law to recover damages for an injury to a corporation can be

brought only in the name of the corporation itself acting through its directors, and not by an

individual stockholder though the injury may incidentally result in *diminishing or destroying the*

*value of the stock*."  *Waller,* 187 Md. at 189, 49 A.2d at 452 (emphasis added).  This holding in

*Waller* is "applicable even when the wrongful acts were done maliciously with intent to injure a

particular stockholder."  *Danielewicz v. Arnold,* 137 Md. App. 601, 617, 769 A.2d 274, 283

(2001).[12]

 Plaintiffs cite a decision issued by the United States Court of Appeals for the Second

Circuit, *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002), which found that Maryland law

recognizes fiduciary duties owed by directors, not only to the corporation, but also directly to

shareholders.  *Id.* at 173 (citing *Toner v. Baltimore Envelope Co.*, 304 Md. 256, 268-69, 498

A.2d 642, 648 (Md. 1985); *Waller,* 187 Md. at 194, 49 A.2d at 454).  In reaching this

conclusion, however, *Strougo* did not discuss the 2001 Maryland Court of Appeal's decision in

*Werbowsky*.  *See Werbowsky*, 362 Md. at 598-99, 766 A.2d at 133.  Instead the Second Circuit

relied exclusively on *Waller* and *Toner.  See Strougo,* 282 F.3d at 173.

---

[12] *Waller* does recognize that certain types of actions may be brought by a shareholder directly.  "[U]nquestionably[,] a stockholder may bring suit in his own name to recover damages from an officer of a corporation for acts which are violations of a duty arising from contract or otherwise and owing directly from the officer to the injured stockholder, though such acts are also violations of duty owing to the corporation."  *Waller,* 187 Md. at 192, 49 A.2d at 453.  For example, a suit alleging corporate malfeasance that directly results in the impairment of a common stockholder's right to vote is likely a direct suit.  *See e.g., Lipton v. News Intl.*, 514 A.2d 1075, 1079 (Del. 1986), *overruled on other grounds by Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) (explaining that the right to vote is a contractual right possessed by a shareholder); *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000).

2.      The Claims in Jolly Roger's Complaint

Based on the facts presented by this case, however, this Court need not determine

whether Maryland law recognizes a fiduciary duty owed by a corporation's directors directly to

shareholders, nor whether shareholders are prohibited from pursuing derivative claims based on

breaches of fiduciary duty.  Both parties accept that directors owe fiduciary duties to the

corporation.  *See generally Werbowsky*, 362 Md. at 598-99, 766 A.2d at 133 (noting that under §

2-405.1(a) of Md. Corp. & Ass'ns Code Ann. a director's obligations "run[], however, to the

corporation and not, at least directly, to the shareholders.").  Although it is difficult to discern

precisely what injury Jolly Roger claims in its Complaint, what is clear is that there was an

alleged injury suffered by Sizeler, the corporation, as a result of the stock issuance on March 14,

2005.  The Complaint contends that the Sizeler Directors wrongfully sold the newly issued

shares for a discounted price in the private sale to the four institutional investors to entrench

themselves as Directors and, in some cases, officers of the company.  If true, the resulting injury

would clearly be one to the corporation, as it would have received inadequate consideration for

its shares because of the Directors' allegedly disingenuous motive of entrenchment.

The Complaint also characterizes the Plaintiffs' injury as one of dilution.  The

Complaint, however, does not specify whether the dilution claim relates to dilution of voting

power or dilution of share value.  Assuming for a moment that a reasonable inference from the

Plaintiffs' Complaint is that it contains a claim for dilution of voting power and share/asset

value, the Maryland Court of Special Appeals rejected the suggestion that a similar contention

could support a direct suit in *Danielewicz*.  *Danielewicz*, 137 Md. App. at 616, 769 A.2d at 283.

In *Danielewicz* the plaintiff argued that she had a cause of action as an individual because the

12

alleged wrongful conduct resulted in "the dilution of her majority interest" in the company.  *Id*.
The court rejected this position.  Under *Waller* any dilution in the price or value of the
stockholders' shares is not an actionable direct injury.  *See Waller,* 187 Md. at 189, 49 A.2d at
452 (explaining that an action that causes harm to a corporation and incidentally injures
shareholders by diminishing or destroying the value of their stock is not a direct action).

Pre-*Tooley*, Delaware courts determined that dilution claims were individual in nature
only where a significant stockholder's interest was increased at the sole expense of the minority.
*See In re Paxson Communication Corp. Shareholders Litigation*, 2001 WL 812028, *5 (Del. Ch.
2001).  This holding was recognized post-*Tooley*, in *In re J.P. Morgan Chase & Co.*, 2005 WL
1076069 (Del. Ch. April 29, 2005), which stated "to the extent that any alleged decrease in the
asset value and voting power of plaintiffs' shares . . . results from the issuance of new equity to a
third party . . ., plaintiffs' dilution theory as a basis for a direct claim fails and any individual
claim for dilution must be dismissed."  *Id.* at *6 (quoting *In re Paxson Communication Corp.
Shareholders Litigation*, 2001 WL 812028 at *5) (rejecting that dilution claim was direct).

Certainly not every issuance of stock by a corporation can constitute a direct claim for
dilution by the corporation's stockholders.  Here, the Plaintiffs' dilution claim is dependent on
the alleged fiduciary duty breach to Sizeler, which claims that the Directors, to entrench
themselves, accepted inadequate consideration for the shares sold to the institutional investors.
Therefore, in this case, any dilution claim is incidental to the alleged fiduciary duty breach to the
corporation.  *See Waller,* 187 Md. at 189, 49 A.2d at 452 (explaining that an action that causes
harm to a corporation and incidentally injures shareholders by diminishing or destroying the
value of their stock is not a direct action); *Tooley*, 845 A.2d at 1039 (holding that to bring a

direct suit "[t]he stockholder's claimed direct injury must be independent of *any alleged injury to the corporation*" and to show such an injury, "[t]he stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail *without showing an injury to the corporation*.") (emphasis added).   As a result, Defendants' Motion to Dismiss is granted to the extent that any purported direct cause of action asserted by the Plaintiffs must be dismissed with prejudice.

B.      Whether Plaintiffs May Assert a Derivative Claim

        Although not addressed by either party, nowhere in Plaintiffs' Complaint does it state that Jolly Roger was a shareholder at the time the instant suit was filed.  A plaintiff that ceases to be a shareholder loses standing to continue a derivative suit.  *See Lewis v. Anderson*, 477 A.2d 1040, 1047 (Del. 1984); *Lewis v. Ward*, 852 A.2d 896 (Del. 2004).[13]  Even though it would appear from the face of the Complaint that Plaintiff Jolly Roger cannot bring a derivative suit because it failed to state that it was a shareholder at the time the suit was filed, this Court will consider whether Plaintiffs meet the prerequisites necessary to bring a derivative suit.

        Both Maryland law and Rule 23.1 of the Federal Rules of Civil Procedure require that a stockholder make demand on a corporation before bringing suit.  Since the cause of action belongs to the corporation in a derivative suit, "a shareholder [must] first make a good faith

---

        [13]     *Snyder v. Pleasant Valley Finishing Co., Inc.*, 756 F. Supp. 725, 730 (S.D.N.Y. 1990) (citing *Tenney v. Rosenthal*, 189 N.Y.S.2d 158, 163 (1959)) ("A corporation's dissolution or liquidation, without more, will not defeat a shareholder's right to prosecute an action on the corporation's behalf. . . . Where a plaintiff, however, voluntarily disposes of her shares, her rights as a shareholder cease, and her interest in the derivative action is terminated."); *Schilling v. Belcher*, 582 F.2d 995, 996 (5th Cir. 1978) (applying federal and Florida law) ("[A] shareholder who sells his stock pending appeal of a favorable judgment in a shareholder's derivative suit against the corporation, loses standing to further prosecute or defend the case" unless its judgment is personally in his favor.); *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 130 (1985) ("Once a derivative plaintiff sells its stock, it no longer has standing to prosecute the derivative claims on behalf of the remaining shareholders.").

effort to have the corporation act directly and explain to the court why such an effort either was not made or did not succeed." *Werbowsky*, 362 Md. at 600, 766 A.2d at 133.  Rule 23.1 requires that a complaint in a derivative action "shall also allege with *particularity the efforts*, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and *the reasons for the plaintiff's failure to obtain the action or for not making the effort*."  Fed. R. Civ. Pro. 23.1 (emphasis added).  Plaintiffs' Complaint does not meet these requirements, likely because Plaintiffs sought to bring a direct action.

In addition to requesting leave to re-plead its cause of action as derivative, Plaintiffs argue that demand on the corporation would have been futile.  The Maryland Court of Appeals has specifically addressed the issue of demand futility in its recent opinion *Werbowsky v. Collomb*, 362 Md. 581, 766 A.2d 123 (Md. 2001).  For demand to be futile, the allegations or evidence must clearly demonstrate, "in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule."  *See Werbowsky*, 362 Md. at 620, 766 A.2d at 144.  This futility exception is very limited.  *See id.*

Plaintiffs contend that demand is excused under the second exception because the Directors were personally conflicted, as they want to keep their positions as directors and officers of the corporation.  Plaintiffs' Complaint does not even specify which Directors voted for the challenged transaction - the stock issuance to the four institutional investors.  In addition,

all but two of the Directors are outside directors.  The Maryland Court of Appeals specifically

noted that demand will not be excused "simply because a majority of the directors approved or

participated in some way in the challenged transaction or decision, or on the basis of generalized

or speculative allegations that they are conflicted or are controlled by other conflicted persons, or

because they are paid well for their services as directors, were chosen as directors at the behest

of controlling stockholders, or would be hostile to the action."  *Werbowsky*, 362 Md. at 618, 766

A.2d at 143-44.  Applying this standard, the allegations in Plaintiffs' Complaint are insufficient

to excuse demand.  Therefore, Defendants' Motion to Dismiss is granted and any derivative

claims alleged by Plaintiffs must be dismissed without prejudice.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.  A separate

Order will follow.


Date: November 3, 2005                              \_\_/s_____
                                                    Richard D. Bennett
                                                    United States District Judge